IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


NANCY LORRAINE WILLS,                          10-CV-166-BR

        Plaintiff,                             OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.


**RICHARD F. MCGINTY**
McGinty & Belcher, PC
P.O. Box 12806
Salem, OR 97309
(503) 371-9636

        Attorneys for Plaintiff


1 - OPINION AND ORDER

**DWIGHT C. HOLTON**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

**DAVID MORADO**
Regional Chief Counsel
**TERRYE ERIN SHEA**
Special Assistant United States Attorneys
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA  98104
(206) 615-2531

        Attorneys for Defendant

**BROWN, Judge.**

     Plaintiff Nancy Lorraine Wills seeks judicial review of a final decision of the Commissioner of the Social Security Admini-stration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

     For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

## ADMINISTRATIVE HISTORY

     Plaintiff filed her applications for SSI and DIB on

2 - OPINION AND ORDER

July 24, 2006, and alleged a disability onset date of

November 7, 1999.  Tr. 108-10.[1]  The applications were denied

initially and on reconsideration.  An Administrative Law Judge

(ALJ) held a hearing on July 16, 2009.  Tr. 20-61.  Plaintiff was

represented by an attorney at the hearing.  Plaintiff and a VE

testified.  At the hearing, Plaintiff amended her disability

onset date to October 1, 2001.  Tr. 23.

The ALJ issued a decision on July 16, 2009, in which she

found Plaintiff was disabled as of September 1, 2005, and,

therefore, Plaintiff is only eligible for SSI benefits.  Tr. 10-

19.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the

final decision of the Commissioner on January 25, 2010, when the

Appeals Council denied Plaintiff's request for review.


## BACKGROUND

Plaintiff was born on October 11, 1946, and was 62 years old

at the time of the hearing.  Tr. 108.  Plaintiff obtained a

college degree.  Tr. 25.  She has past relevant work experience

as a bank teller.  Tr. 17.

Plaintiff alleges disability due to chronic atrial

fibrillation, degenerative disc disease of the lumbar spine,

degenerative joint disease of the right knee, obesity, asthma,

---

[1]  Citations to the official transcript of record filed by
the Commissioner on July 14, 2010, are referred to as "Tr."

3 - OPINION AND ORDER

arthritis of the hands, intestinal problems, and suicidal
ideation.  Tr. 12-13.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 15-16.

## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004
(9th Cir. 2005).  To meet this burden, a claimant must
demonstrate her inability "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."
42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of
developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841
(9th Cir. 2001).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec.
Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial
evidence means more than a mere scintilla, but less than a

preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the

Commissioner determines the claimant is engaged in substantial gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R. § 404.1520(a)(4).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iii).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's Residual Functional Capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 404.1520(e).  *See also* Soc. Sec. Ruling (SSR) 96-8p.  A "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete

incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284

n.7 (9ᵗʰ Cir. 1996).  The assessment of a claimant's RFC is at

the heart of Steps Four and Five of the sequential analysis

engaged in by the ALJ when determining whether a claimant can

still work despite severe medical impairments.  An improper

evaluation of the claimant's ability to perform specific work-

related functions "could make the difference between a finding of

'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the

Commissioner determines the claimant retains the RFC to perform

work she has done in the past.  *Stout*, 454 F.3d at 1052.  *See*

*also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine

whether the claimant is able to do any other work that exists in

the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20

C.F.R. § 404.1520(a)(4)(v).  Here the burden shifts to the

Commissioner to show a significant number of jobs exist in the

national economy that the claimant can do.  *Tackett v. Apfel*, 180

F.3d 1094, 1098 (9ᵗʰ Cir. 1999).  The Commissioner may satisfy

this burden through the testimony of a VE or by reference to the

Medical-Vocational Guidelines set forth in the regulations at

20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner

meets this burden, the claimant is not disabled.  20 C.F.R.

§ 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged onset date of October 1, 2001, through her December 31, 2002, date last insured and later.  Tr. 12.

At Step Two, the ALJ found Plaintiff has the severe impairments of chronic atrial fibrillation, degenerative disc disease of the lumbar spine, degenerative joint disease of the right knee, and obesity.  Tr. 12.  The ALJ found Plaintiff's asthma, arthritis of the hands, intestinal problems, and suicidal ideation not to be severe.  Tr. 13.

At Step Three, the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 24.  The ALJ also found before September 1, 2005, Plaintiff had the RFC to perform "the full range of sedentary work."  Tr. 14.

At Step Four, the ALJ concluded Plaintiff is not capable of performing her past relevant work.  Tr. 17.

At Step Five, the ALJ found before September 1, 2005, Plaintiff could perform jobs that existed in significant numbers in the national economy, but after that date Plaintiff could not do so.  Tr. 17-18.  Because September 1, 2005, is after Plaintiff's date last insured, the ALJ found Plaintiff is not

entitled to DIB.  Nevertheless, the ALJ concluded Plaintiff was disabled after September 1, 2005, and, therefore, is entitled to SSI benefits.


## DISCUSSION

Plaintiff challenges only the ALJ's conclusion that Plaintiff was not disabled between her alleged onset date of October 1, 2001, and her date last insured of December 31, 2002, and, therefore, that she is not eligible for DIB.  Plaintiff contends the ALJ erred when she (1) improperly rejected Plaintiff's testimony, (2) improperly rejected lay-witness testimony, and (3) improperly assessed Plaintiff's RFC.

**I.   The ALJ did not err when she rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when she failed to provide clear and convincing reasons for rejecting Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

9 - OPINION AND ORDER

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).   General assertions that the claimant's testimony is not credible are insufficient.  *Id*.   The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are less than credible prior to September 1, 2005."  Tr. 15.   The ALJ noted Plaintiff's reported activities before September 1, 2005, "suggest her cardiovascular and respiratory symptoms were not as disabling as alleged at the hearing."  Tr. 16.   For example, beginning in December 2002 Plaintiff reported to June Hawkins, M.D., treating physician, that she was able to go to the gym daily and to do aerobic and strength-building exercises.  Tr. 16, 259, 266, 273.   The ALJ also noted Plaintiff reported to Dr. Hawkins in November 2003 that she had "been busy with refinish work, painting, [and] sanding of woodwork in the house."  Tr. 16, 261.

The Court concludes on this record that the ALJ did not err when she rejected Plaintiff's testimony as to the intensity, persistence and limiting effects of her symptoms prior to September 1, 2005, because the ALJ provided legally sufficient reasons supported by the record for doing so.

**II.  The ALJ erred when she implicitly rejected Thelma Butzlaff's July 30, 2009, statement.**

Plaintiff contends the ALJ erred when she implicitly rejected the July 30, 2009, lay-witness statement of Thelma Butzlaff.

Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members.").

Butzlaff submitted two written statements:  one on August 9, 2006, and one on July 30, 2009.  Butzlaff's August 9, 2006, statement did not specifically limit Butzlaff's observations to the period between October 1, 2001, and December 31, 2002.  In Butzlaff's July 30, 2009, statement, however, Butzlaff noted she was "only commenting on what [she] knew about [Plaintiff] for the period from the end of 2001 to the end of 2002."  Tr. 211.

11 - OPINION AND ORDER

The ALJ gave "great weight" to Butzlaff's statements in reaching her conclusion that Plaintiff was disabled after September 1, 2005.  Tr. 16.  The ALJ, however, did not address the fact that Butzlaff in her July 30, 2009, statement noted Plaintiff suffered virtually the same level of impairment from the end of 2001 to the end of 2002.  Because the ALJ concluded Plaintiff was not disabled before her date last insured of December 31, 2002, it appears the ALJ implicitly rejected Butzlaff's July 30, 2009, statement as to Plaintiff's impairments during the relevant period, and the ALJ did not provide any reasons for doing so.

The Court concludes on this record that the ALJ erred when she implicitly rejected Butzlaff's July 30, 2009, statement because the ALJ did not provide legally sufficient reasons supported by the record for doing so.

**III. The ALJ erred in her assessment of Plaintiff's RFC.**

Plaintiff contends the ALJ failed in her assessment of Plaintiff's RFC because the ALJ (1) did not include the limitations noted in Plaintiff's testimony; (2) did not include the limitations noted in Butzlaff's July 30, 2009, statement; and (3) concluded Plaintiff did not suffer an impairment before her December 31, 2002, date last insured that lasted or could be expected to last for a continuous period of not less than 12 months.

12 - OPINION AND ORDER

### A.    Plaintiff's testimony

The Court already has concluded the ALJ did not err when she rejected Plaintiff's testimony in part.  The Court, therefore, also concludes the ALJ did not err when she failed to include in her assessment of Plaintiff's RFC the impairments alleged in Plaintiff's testimony.

### B.    Lay-witness statement

The Court already has concluded the ALJ erred when she implicitly rejected Butzlaff's July 30, 2009, statement.  The Court, therefore, also concludes the ALJ erred when she failed to include in her assessment of Plaintiff's RFC the limitations Butzlaff alleged Plaintiff suffered from prior to September 1, 2005.

### C.    Plaintiff's RFC during the period between October 1, 2001, and December 31, 2002.

Plaintiff contends the ALJ erred when she found Plaintiff had the RFC to perform a full range of sedentary work between her October 1, 2001, alleged onset date and her December 31, 2002, date last insured on the ground that Plaintiff did not have an impairment in that period that lasted or could be expected to last for a continuous period of not less than 12 months.

The ALJ found:

> With regard to her cardiovascular condition, the evidence of record documents her ablation surgery

13 - OPINION AND ORDER

> in November 2001, which ultimately proved
> unsuccessful in resolving her symptoms.  A
> pacemaker was installed in October 2002.  The
> record documents cardiovascular symptoms between
> June 2002 and May 2003, . . . which would
> reasonably impact [Plaintiff's] ability to sustain
> employment.  These symptoms did not persist at
> such a level, however, for a period of 12 months
> or more.  Following another ablation procedure in
> March 2003, [Plaintiff] reported that she still
> experience mild fluttering but that her symptoms
> were much, much improved from where she as before.

Tr. 15 (citations and quotations omitted).  Plaintiff asserts the

record reflects Plaintiff suffered severe cardiovascular symptoms

in the 14-month period between October 1, 2001, and December 31,

2002, that reasonably impacted her ability to sustain employment.

Plaintiff points to a number of instances in the record in which

Plaintiff reported symptoms of fibrillation and angina.  Tr. 550-

51, 554.  As the ALJ noted, Plaintiff underwent ablation surgery

in November 2001 in an effort to control her symptoms, but that

surgery was unsuccessful.

        The ALJ also noted, however, that Plaintiff reported

going to the gym regularly and doing aerobics and strength

training beginning in July 2002.  In fact, Donald P. Stutzman,

M.D., treating cardiologist, reported Plaintiff's atrial

fibrillation did not become a consistent problem until September

2005 when Plaintiff was in atrial fibrillation "most of the

time."  Tr. 15, 294.

        The Court concludes on this record that the ALJ did not err

when she found Plaintiff did not have an impairment that lasted

14 - OPINION AND ORDER

or could have been expected to last for a continuous period of

not less than 12 months between October 1, 2001, and December 31,

2002, because the ALJ provided legally sufficient reasons

supported by the record for doing so.


## REMAND

Generally the decision whether to remand for further

proceedings or for immediate payment of benefits is within the

discretion of the Court.  *Harman v. Apfel*, 211 F.3d 1172, 1178

(9th Cir.), *cert. denied*, 531 U.S. 1038 (2000).  *See also Smolen*,

80 F.3d at 1292.  The Ninth Circuit, however, has established a

limited exception to this general rule.  *Id.*  Under the limited

exception, the Court must grant an immediate award of benefits

when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.*  The second and third prongs of the test often merge into a

single question:  Whether the ALJ would have to award benefits if

the case were remanded for further proceedings.  *See id*. at 1178

n.2.

The ALJ gave great weight to Butzlaff's August 2006

statement in determining Plaintiff was disabled after

15 - OPINION AND ORDER

September 1, 2005.  The Court, however, has concluded the ALJ

erred when she implicitly, without providing reasons, rejected

Butzlaff's July 30, 2009, statement, which related to Plaintiff's

impairments before her date last insured and in which Butzlaff

noted limitations substantially similar to Plaintiff's

limitations after September 1, 2005.

     The Ninth Circuit has held an ALJ is required to consider

testimony from a lay witness, *Bruce v. Astrue*, 557 F.3d 1113,

1115 (9th Cir. 2009), and failure to do so requires remand unless

the Court "can confidently conclude that no reasonable ALJ, when

fully crediting the testimony, could have reached a different

disability determination."  *Stout,* 454 F.3d at 1056.  On this

record, the Court cannot conclude "no reasonable ALJ, when fully

crediting the testimony, could have reached a different

disability determination."  Accordingly, the Court must remand

this matter.

     In addition, the Court finds the administrative record is

not sufficiently clear to determine that Plaintiff is entitled to

immediate DIB.  In the exercise of its discretion, therefore, the

Court concludes the limited exception requiring the Court to

grant an immediate award of DIB does not apply, and this matter

should be remanded for further proceedings.

Accordingly, the Court remands this matter for further administrative proceedings consistent with this Opinion and Order.

**CONCLUSION**

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 26th day of April, 2011.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

17 - OPINION AND ORDER